| STATE OF NORTH CAROLINA | File No. 13 CV 002059 |
|---|---|
| Orange County | In The General Court Of Justice<br>☐ District ☒ Superior Court Division |

**Name And Address Of Plaintiff 1**
JEANNE LANGLEY

*FILED 2013 DEC 13 PM 1:21*
*ORANGE CO., C.S.C.*
*BY ___*

**Name And Address Of Plaintiff 2**

**VERSUS**

**Name Of Defendant 1**
NINESIGMA, INC.

Summons Submitted ☒ Yes ☐ No

**Name Of Defendant 2**

Summons Submitted ☐ Yes ☐ No

☐ Jury Demanded In Pleading
☐ Complex Litigation

# GENERAL
## CIVIL ACTION COVER SHEET
☒ INITIAL FILING   ☐ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice For Superior and District Courts

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
Catherine E. Lee
Post Office Box 1270
Raleigh, NC 27602

| Telephone No. 919-755-0505 | Cell Telephone No. |
|---|---|
| NC Attorney Bar No. 35375 | Attorney E-Mail Address clee@allen-pinnix.com |

☒ Initial Appearance in Case   ☐ Change of Address

**Name Of Firm**
Allen, Pinnix & Nichols, P.A.

**FAX No.** 919-829-8098

**Counsel for**
☒ All Plaintiffs   ☐ All Defendants   ☐ Only (List party(ies) represented)

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

*(check all that apply)*
- ☐ Amend (AMND) *Assess Motions Fee (SEE NOTE)*
- ☐ Amended Answer/Reply (AMND-Response) *Assess Motions Fee (SEE NOTE)*
- ☐ Amended Complaint (AMND) *Assess Motions Fee*
- ☐ Answer/Reply (ANSW-Response) *(SEE NOTE)*
- ☐ Change Venue (CHVN) *Assess Motions Fee*
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNFJ)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL) *Assess Motions Fee*
- ☐ Contempt (CNTP) *Assess Motions Fee*
- ☐ Continue (CNTN) *Assess Motions Fee*
- ☐ Compel (CMPL) *Assess Motions Fee*
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim (List On Back) (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD) *Assess Motions Fee*
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL) *Assess Motions Fee*
- ☐ Extend Time For Complaint (EXCO) *Assess Motions Fee*

*(check all that apply)*
- ☐ Failure To Join Necessary Party (FJNP) *Assess Motions Fee*
- ☐ Failure To State A Claim (FASC)
- ☐ Improper Venue/Division (IMVN) *Assess Motions Fee*
- ☐ Intervene (INTR) *Assess Motions Fee*
- ☐ Interplead (OTHR) *Assess Motions Fee*
- ☐ Lack Of Jurisdiction (Person) (LJPN) *Assess Motions Fee*
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM) *Assess Motions Fee*
- ☐ Rule 12 Motion In Lieu of Answer (MDLA) *Assess Motions Fee*
- ☐ Sanctions (SANC) *Assess Motions Fee*
- ☐ Set Aside (OTHR) *Assess Motions Fee*
- ☐ Show Cause (SHOW) *Assess Motions Fee*
- ☐ Transfer (TRFR) *Assess Motions Fee*
- ☐ Third Party Complaint (List Third Party Defendants on Back) (TPCL)
- ☐ Vacate/Modify Judgment (VCMD) *Assess Motions Fee*
- ☐ Withdraw as Counsel (WDCN) *Assess Motions Fee*
- ☒ Other *(specify and list each separately)*
  Petition for Declaratory Judgment and Motion and Application for Permanent Injunction

NOTE: See Side Two for a list of motions not subject to the motions fee.
NOTE: Assess fee only if court permission is required to amend.

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)

- ☒ Injunction (INJU)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. 44A (MVLN)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Possession Of Personal Property (POPP)
- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other (specify and list separately)
  Declaratory Judgment

| Date December 13, 2013 | Signature Of Attorney/Party *Catherine E. Lee* |
|---|---|

NOTE: All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752) or Court Action (AOC-CV-753) cover sheet.
(Over)
AOC-CV-751, Rev. 6/11, © 2011 Administrative Office of the Courts

**DO NOT CHARGE MOTIONS FEE**
Assess Costs (COST) Including Attorney's Fees (ATTY)
Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
Modification Of Child Support In IV-D Actions (MSUP)
Notice Of Dismissal With Or Without Prejudice (VOLD)
Petition To Sue As Indigent (OTHR)

**DO NOT CHARGE MOTIONS FEE. FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Forclosure) (RSOT)
Supplemental Procedures (SUPR)

**DO NOT CHARGE MOTIONS FEE. OTHER FEES APPLY**
Motion For Out-of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out Of State Attorney/Pro Hac Vice Fee)
Request For Subpoena By Out-Of-State Attorney

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s) ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

Plaintiff(s) Against Whom Counterclaim Asserted

Defendant(s) Against Whom Crossclaim Asserted

AOC-CV-751, Side Two, Rev. 6/11
© 2011 Administrative Office of the Courts

| | |
|---|---|
| NORTH CAROLINA<br>ORANGE COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>13 CVS _____ |

FILED
2013 DEC 13 PM 1:22
ORANGE CO., C.S.C.
BY _____ SAO

| | |
|---|---|
| JEANNE LANGLEY<br>    Plaintiff,<br><br>v.<br><br>NINESIGMA, INC.<br>    Defendant | )<br>)  **VERIFIED COMPLAINT, PETITION FOR**<br>)  **DECLARATORY JUDGMENT**<br>)  **AND MOTION AND APPLICATION**<br>)  **FOR PERMANENT INJUCTION**<br>)<br>)<br>)<br>) |

NOW COMES Plaintiff, Jeanne Langley, complaining against Defendant, NineSigma, Inc., and moves for a declaratory judgment and other injunctive relief and avers in support as follows:

### Preliminary Statement

1. This action seeks declaratory, equitable, and injunctive relief from a non-compete provision in Plaintiff's employment contract that is unreasonable under North Carolina and Ohio law and therefore void and unenforceable.

### Parties, Jurisdiction and Venue

2. Plaintiff is a citizen and resident of Orange County, North Carolina.

3. Defendant is a corporation organized under the laws of the State of Ohio, with its principal office located at 23611 Chagrin Blvd., Suite 320, Cleveland OH 44122-5540.

4. This Court has jurisdiction both over the subject matter of this action and over the parties. Venue is proper.

## Factual Allegations

### Defendant's Business and Nature of Plaintiff's Employment

5. Defendant is a privately-held consulting company incorporated as a for-profit corporation in the State of Ohio, which facilitates innovation partnerships between organizations in the private, public, and social sectors around the world; was recognized in 2012 as one of the fastest-growing private United States companies; created and operates NineSights®, an open innovation social media portal; has clients among the Fortune 500/Global 1000 companies in various industries, such as automotive, chemical, consumer packaged goods, food and beverage, healthcare/medical devices, energy and utilities, electronics, and high tech; and is based in Cleveland, Ohio with additional offices in Leuven, Belgium; Tokyo, Japan; Melbourne, Australia; and Seoul, South Korea.

6. Plaintiff Jeanne Langley enjoyed a successful career in sales including employment at the management level, before Defendant hired her on February 22, 2010, to be its Director of Business Development, Eastern Regional Manager of North America. In this role, Plaintiff interacted with specific assigned accounts in the East Coast of North America, including the Eastern provinces of Canada and all Eastern US states and prospective accounts in the same geographical region.

7. On or about February 17, 2010, Defendant presented Plaintiff with an Employment, Non-Solicitation and Confidentiality Agreement (the "Agreement"). A true and accurate copy

of that Agreement is attached as Exhibit A and is incorporated by reference herein.

8. On or about February 19, 2010, Plaintiff signed and returned the Agreement to Defendant.

9. Despite her competently performing the duties of that position at a pace unmatched by any other salesperson, Defendant provided Plaintiff with compensation levels below comparable male employees of Defendant and with fewer stock options, tools, and support than such employees. Furthermore, Defendant demoted her on December 12, 2011, effective January 1, 2012. In so doing, Defendant placed Plaintiff in a position in which she is competently performing her job duties with a significantly smaller territory containing a substantially diminished current or prospective client base than the one she had as Eastern Regional Manager. Since January 1, 2012, Plaintiff has been restricted to current and prospective accounts in Delaware, Maryland, New Jersey, Eastern New York, and Eastern Pennsylvania, with the exception of GE and ExxonMobil nationally, and PepsiCo in Chicago and Florida.

10. Plaintiff currently remains employed by Defendant and has not violated any provision of the Agreement.

**Restrictive Covenants in the Agreement**

11. Paragraph 3 of the Agreement contains a "Non-competition, Non-disclosure and Non-interference" provision.

3

12. Paragraph 3.2 of the Agreement contains restrictive covenants regarding competition.

    Specifically, this provision provides, in pertinent part, the following:

    > During the Employment Period and for a period of one (1) year after termination for any reason of Employee's employment with the Company (the "Non-competition Period"), Employee will not, without the prior written approval of the Directors of the Company, render business development/customer facing services to, act as an officer, director, partner, consultant, agent or employee of, or otherwise assist or operate as a Competitor.

    "Competitor" is defined in the Agreement as "any person or entity engaged in the production, performance, or sale of any Competitive Product or Service." "Competitive Product or Service" is defined in the Agreement as:

    > [A] product or service (i) that is similar to or competitive with a product or service manufactured, sold or performed by the Company during the three month period immediately preceding termination of the Employment Period, or (ii) with respect to which the Company is then currently conducting research and development.

13. Paragraph 3.4 of the Agreement contains the restrictive covenants regarding interference.

    Specifically, this provision provides, in pertinent part, the following:

    > During the Employment Period and for a period of one (1) year after termination for any reason of Employee's employment with the Company, Employee agrees not to: . . . (ii) induce, attempt to induce, or assist others in inducing or attempting to induce any customer, supplier, or other person or entity associated or doing business with the Company (or proposing to become associated or to do business with the Company), with which Employee had business contact within the one (1) year preceding the termination of her employment with the Company, to terminate his, her or its relationships with the Company (or to refrain from becoming associated or doing business with the Company) or in any other manner to interfere with the

relationship between the Company and any such person or entity.

14. The restrictive covenants in Paragraph 3.2 of the Agreement are unreasonable and more restrictive than necessary to protect the legitimate business interests of Defendant and therefore should be held unenforceable as a matter of law. Specifically, this restrictive covenant is overly broad as to the geographical restrictions and as to the scope of restricted work.

15. The restrictive covenants in Paragraph 3.4 of the Agreement are unreasonable and more restrictive than necessary to protect the legitimate business interests of Defendant and therefore should be held unenforceable as a matter of law. Specifically, this restrictive covenant is overly broad as to the geographical restrictions and as to the scope of restricted work. Specifically, this restrictive covenant is overly broad as to the geographical restrictions and as to the scope of restricted work.

16. Defendant's enforcement of Paragraphs 3.2 and 3.4 of the Agreement would impose greater restraint on Plaintiff's ability to earn a living and to seek other employment freely than is necessary to protect Defendant's business interests and, therefore, would be against public policy.

## FIRST CLAIM
### (Petition for Declaratory Judgment)

17. Paragraphs 1 through 16 above are re-alleged and incorporated herein.

5

18. Plaintiff has an actual controversy with Plaintiff regarding the validity, enforceability and applicability of the restrictive covenants in the Agreement that are the subject of this litigation. Therefore, Plaintiff is entitled to bring a Declaratory Judgment Action under Chapter 1, Article 26 of the North Carolina General Statutes.

19. Specifically, N.C. Gen. Stat. § 1-254 provides that:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

20. Plaintiff is entitled to, and requests, a Declaratory Judgment decreeing that the restrictive covenants in the Agreement that are the subject of this litigation:

    a. Are not reasonable and therefore are void and unenforceable;

    b. Are not supported by valid consideration; and

    c. Have been breached by Defendant's actions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays:

I.  That the Court enter a permanent injunction prohibiting Defendant from enforcing the restrictive covenants in the Agreement that are the subject of this litigation;

II. That the Court issue a Declaratory Judgment, holding as unenforceable the restrictive covenants in the Agreement that are the subject of this litigation;

III. That Plaintiff recover its costs and reasonable attorney's fees incurred herein; and

IV. That the Court grant Plaintiff such other and further relief as the Court may deem just and proper.

This is the 11th day of December, 2013.

**ALLEN, PINNIX & NICHOLS, P.A.**

_____
M. Jackson Nichols
North Carolina State Bar No. 7933
Catherine E. Lee
North Carolina State Bar No. 35375
Post Office Box 1270
Raleigh, North Carolina 27602
Telephone:   (919) 755-0505
Facsimile:    (919) 829-8098
Email:         mjn@allen-pinnix.com
                 clee@allen-pinnix.com

## VERIFICATION

JEANNE LANGLEY, first being duly sworn, deposes and says that she is the Plaintiff in the above-captioned matter and that she has read the foregoing Verified Complaint, Petition for Declaratory Judgment and Motion and Application for Permanent Injunction and that the same is true and correct to the best of her own personal knowledge, except to those matters and things therein stated upon information and belief, and as to those matters, he believes them to be true.

This the 12 day of December, 2013.

_____
JEANNE LANGLEY

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE 12th DAY OF DECEMBER, 2013



_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 5/15/2016

# ALLEN, PINNIX & NICHOLS, P.A.
ATTORNEYS AT LAW

P. O. DRAWER 1270

RALEIGH, NORTH CAROLINA 27602

NOEL LEE ALLEN*
C. LYNN CALDER
ANNA BAIRD CHOI
M. JACKSON NICHOLS
JOHN LAWRENCE PINNIX*
CATHLEEN M. PLAUT

BRENNER A. ALLEN**
KENNETH C. DAY
CATHERINE E. LEE
NATHAN E. STANDLEY
ALICE S. GLOVER†

*ALSO LICENSED IN D.C.
**LICENSED ONLY IN WASHINGTON STATE & D.C.
†OF COUNSEL

510 GLENWOOD AVENUE
SUITE 301
RALEIGH, NORTH CAROLINA 27603

TELEPHONE: (919) 755-0505
FACSIMILE: (919) 829-8098
www.allen-pinnix.com

December 13, 2013

James C. Stanford
Orange Co. Clerk of Superior Court
Courthouse
106 East Margaret Lane
Hillsborough, NC 27278

Re: *Jeanne Langley v. NineSigma, Inc.*
13 CVS 2059; Orange County Superior Court

Dear Clerk Stanford:

Enclosed for filing is the original and one copy of Exhibit A to the Verified Complaint, Petition for Declaratory Judgment and Motion and Application for Permanent Injunction filed December 13, 2013.

Please return a file stamped copy in the self-addressed envelope enclosed for your convenience. Thank you for your assistance in this matter.

Sincerely,

Dena J. Brown
N.C. State Bar Certified Paralegal

Enc:. 3

cc: John S. Marshall
Rebecca Bennett

# EMPLOYMENT, NON-COMPETITION AND CONFIDENTIALITY AGREEMENT

THIS EMPLOYMENT, NON-COMPETITION AND CONFIDENTIALITY AGREEMENT (this "Agreement") is made as of March 1, 2010 (the "Effective Date"), by and between NineSigma, Inc., an Ohio corporation (the "Company"), and Jeanne Langley ("Employee").

## WITNESSETH:

WHEREAS, the Company desires to employ Employee upon the terms and conditions set forth herein and Employee wishes to accept such employment upon the terms and conditions set forth herein including, without limitation, the nondisclosure and noncompetition covenants and agreements of Employee set forth in Section 3 hereof.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises and covenants set forth herein, the parties, intending to be legally bound, agree as follows:

1. <u>Employment</u>. The Company hereby employs Employee on an at-will basis, and Employee hereby accepts such employment. The period of time during which the Employee is employed is hereinafter referred to as the "Employment Period." Employee shall perform such duties for the Company as may be assigned to him by his/her Supervisor of the Company. Throughout the Employment Period, Employee shall devote his/her efforts diligently and faithfully on a full-time basis to the business and welfare of the Company in accordance with and in furtherance of the policies and directives of the Company. Employee will not engage in any activity which interferes with the performance of his/her duties hereunder and in any case, without the prior written consent of the CEO of the Company, will not hold any part-time job or perform any consulting services.

2. <u>Compensation and Benefits</u>.

2.1 <u>Salary</u>. The Company shall pay Employee the salary (the "Salary"), less such deductions and withholdings as are required by law, which Salary shall be payable in accordance with the Company's standard payroll practices in effect from time to time.

2.2 <u>Benefits</u>. Employee will, during the Employment Period, be entitled to participate in such health, dental, life insurance, short-term disability, 401(k) and other employee benefit plans, programs and policies of the Company, vacation and holidays, and any other plan which may be made available from time to time by the Company to its employees generally, if, and to the extent that, Employee is otherwise eligible under the terms of such plans. All of the plans, agreements, and undertakings of the Company set forth in this Section 2.2 are referred to herein, collectively, as the "Benefits." Any Benefits shall be subject to such local, state or federal tax reporting requirements as may be in effect at any time during the Employment Period.



EXHIBIT A

2.3     Expenses. During the Employment Period, the Company shall reimburse Employee for the payment of reasonable expenses incurred by Employee in the performance of services on behalf of the Company during the Employment Period. Employee shall furnish the Company with documentation in connection with such expenses required by the Internal Revenue Code and the regulations thereunder or by Company policies. Should Employee be unable to furnish documentation to establish, to the Company's reasonable satisfaction, the business-related nature of the expenses, the Company may, at its option, require Employee to reimburse the Company for such expenses or set off such charges against amounts owed to Employee.

3.     Non-competition, Non-disclosure and Non-interference.

3.1     Definitions. For purposes of this Agreement:

(a)     "Competitor" means any person or entity (or parent, subsidiary or affiliate thereof) engaged in the production, performance or sale of any Competitive Product or Service.

(b)     "Competitive Product or Service" means a product or service (i) that is similar to or competitive with a product or service manufactured, sold or performed by the Company during the three month period immediately preceding termination of the Employment Period, or (ii) with respect to which the Company is then currently conducting research and development.

(c)     "Confidential Information" means all information relating to the terms and conditions of this Agreement and all information belonging to, used by, or that is in the possession of the Company relating to the Company's business, products, services, strategies, pricing, customers, members, exclusive providers, team leaders, representatives, technology, programs, finances, costs, employee compensation, marketing plans, developmental plans, computer software (including all operating system and systems application software), inventions, developments or trade secrets, all to the extent such information is not intended by the Company to be disseminated to the public or to other participants in its trade or business or is otherwise not generally known to Competitors.

3.2     Non-competition. During the Employment Period and for a period of two (2) years after termination for any reason of Employee's employment with the Company (the "Non-competition Period"), Employee will not directly or indirectly, without the prior written approval of the Directors of the Company, render services to, act as an officer, director, partner, consultant, agent or employee of, or otherwise assist or operate as a Competitor. During the Non-competition Period, Employee will immediately notify the Company of any change of his/her address and the name and address of any subsequent employer. Nothing in this Section 3.2 shall prevent Employee from being a member or officer of or from participating in the activities of any trade or professional association, or from acquiring an equity interest in the Company or of less than one percent in a Competitor whose shares are traded on a national securities exchange or over-the-counter.

2

3.3 <u>Non-disclosure</u>. Except in furtherance of his/her duties to the Company pursuant to this Agreement, Employee agrees that he/she will not, at any time, directly or indirectly, disseminate verbally or in writing or use for his/her personal benefit any Confidential Information, regardless of how it may have been acquired, except for the disclosure of such information as may be required by law, or authorized in writing by the Directors of the Company or their designees. Employee further agrees that upon termination of his/her employment he/she will return promptly to the Company all memoranda, notes, records, reports, manuals, and other documents (and all copies thereof) relating to the Company's business which he/she may then possess or have under his/her control. Employee acknowledges that all of the Confidential Information is and shall continue to be the exclusive proprietary property of the Company, whether or not prepared in whole or in part by Employee and whether or not disclosed to or entrusted to the custody of Employee. Employee's obligations under this Section 3.3 and Addendum I will survive any expiration or termination of this Agreement or of Employee's employment with the Company and continue to be binding thereafter.

3.4 <u>Non-interference</u>. During the Employment Period and for a period of two (2) years after termination for any reason of Employee's employment with the Company, Employee agrees not to induce, attempt to induce, or assist others in inducing or attempting to induce any employee, agent, customer, or supplier of the Company or any other person or entity associated or doing business with the Company (or proposing to become associated or to do business with the Company) to terminate his, her or its relationship with the Company (or to refrain from becoming associated or doing business with the Company) or in any other manner to interfere with the relationship between the Company and any such person or entity.

3.5 <u>New Developments</u>. Employee agrees that he/she will disclose promptly to the Company any and all improvements, inventions, developments, discoveries, innovations, systems, techniques, ideas, processes, programs, and other things, whether patentable or unpatentable, that are made or conceived by him alone or with others, in whole or in part, during his/her employment and which were made or conceived in whole or in part with the Company's resources or during the course of his/her employment with the Company (collectively referred to as the "New Developments"). Employee further agrees that all New Developments shall be and remain the sole and exclusive property of the Company and that Employee shall, upon the request of the Company, and without further compensation, do all lawful things reasonably necessary to ensure the Company's ownership of any New Development, including the execution of any necessary documents assigning and transferring to the Company all of Employee's right, title and interest in and to any New Development, and the execution of all necessary documents required to enable the Company to file and obtain patents and copyrights in the United States and foreign countries on any New Development.

3.6 <u>Remedies</u>. If Employee commits or threatens to commit a breach of any of the provisions of this Section 3, the Company shall have the right to have the provisions of this Agreement specifically enforced by any court having jurisdiction, it being acknowledged by Employee and agreed by the parties that any such breach or threatened breach will cause injury to the Company for which money damages alone will not provide an adequate remedy. Therefore, if Employee threatens to violate or violates any provisions of this Section 3, Employee agrees that in addition to its other remedies, the Company is entitled to injunctive

3

relief including, but not limited to, temporary restraining orders and/or preliminary or permanent injunctions to restrain or enjoin any violation or threatened violation of this Agreement. The rights and remedies enumerated above shall be in addition to, and not in lieu of, any other rights and remedies available to the Company at law or in equity.

3.7     Reformation of Agreement.  If any covenant contained in this Section 3, or any portion thereof, is found by a court of competent jurisdiction to be invalid or unenforceable as against public policy or for any other reason, such court shall exercise its discretion to reform such covenant to the end that Employee shall be subject to non-disclosure, non-interference and non-competition covenants that are reasonable under the circumstances and are enforceable by the Company.  In any event, if any provision of this Agreement is found unenforceable for any reason, such provision shall remain in force and effect to the maximum extent allowable and all non-affected provisions shall remain fully valid and enforceable.

4.     Consequences of Termination.  The provisions of Section 3 will survive termination of this Agreement.  In addition, all rights of the parties to seek damages and other relief for breaches of this Agreement occurring prior to or on account of the termination hereof by the other of this Agreement will survive termination.  Except as set forth in this Section 4, all rights and obligations of the parties hereunder will expire upon termination of this Agreement.

5.     Miscellaneous.

5.1     Waiver.  Failure of the Company at any time to enforce any provision of this Agreement or to require performance by Employee of any provision hereof shall in no way affect the validity of this Agreement or any part hereof or the right of the Company thereafter to enforce its rights hereunder; nor shall it be taken to constitute a condonation or waiver by the Company of that default or any other or subsequent default or breach.

5.2     Notices.  All notices or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to be effectively served and delivered (a) when delivered personally; (b) when given by facsimile (with a copy mailed by first-class U.S. mail); (c) one (1) business day following deposit with a recognized national air courier service; or (d) three (3) business days after being deposited in the United States mail in a sealed envelope, postage prepaid, return receipt requested, to Employee at his/her last known address on the records of the Company, and to the Company at the following address (or to such other address for either party as shall be specified by notice pursuant hereto):

> NineSigma, Inc.,
> 23611 Chagrin Blvd., Suite 320
> Cleveland, Ohio  44122-5540

4

With a copy to:

> John Mino
> Calfee, Halter & Griswold
> 1400 KeyBank Center
> 800 Superior Avenue
> Cleveland, OH 44114-2688

       5.3    <u>Assignment</u>. Except as set forth herein, no rights of any kind under this Agreement shall, without the prior written consent of the Company, be transferable to or assignable by Employee or any other person, or, except as provided by applicable law, be subject to alienation, encumbrance, garnishment, attachment, execution or levy of any kind, voluntary or involuntary. This Agreement shall be binding upon and shall inure to the benefit of the Company and its successors and assigns. The Company may assign its rights and obligations under this Agreement at any time to any of its subsidiaries that agree to be bound by the terms hereof.

       5.4    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Ohio without regard to the conflicts of law principles thereof.

       5.5    <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same document.

       5.6    <u>Headings</u>. The headings in this Agreement are intended solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

       5.7    <u>No Rights in Any Property of Company</u>. Except as otherwise provided in this Agreement, the undertakings of the Company to pay the Employee herein constitute merely the unsecured promises of the Company. No property of the Company is or shall be, by reason of this Agreement, held in trust for the Employee. The Employee shall not have, by reason of this Agreement, any right, title or interest of any kind in or to any property of the Company.

       5.8    <u>Consent to Jurisdiction and Venue</u>. Any action with respect to the equitable enforcement of any of the Employee's covenants set forth in Section 3 may be brought in the Federal District Court for the Northern District of Ohio (Eastern Division) or the Court of Common Pleas of Cuyahoga County, and the Employee consents to being subject to the jurisdiction of such court and to have any such proceedings take place in Cleveland, Ohio.

INTENDING TO BE LEGALLY BOUND, the parties or their duly authorized representatives have signed this Agreement as of the date first above written.

**NineSigma, Inc.**

By: _____
Paul S. Stupay

Its: _____Executive Vice President_____

**EMPLOYEE**

By: _____
(Signature)

_____Jeanne Langley_____

6

# Addendum I

1. <u>Private Information.</u> The Employee agrees with the Employer that the work for which s/he is employed is and will be of a private nature, and in connection with the performance of his/her services on behalf of the Employer, the Employer may make available to him/her information of a private nature as to the Employer and its clients, methods, trade secrets, programs, operations, customers and employees. The Employee warrants and agrees that s/he will receive in strict confidence all such private information belonging to the Employer or to the clients of the Employer. The Employee further agrees to maintain and to assist the Employer in maintaining the secrecy of such information, and to take the same precautions as s/he would with his/her own proprietary information to prevent it from coming into unauthorized hands.

   The Employee further covenants and agrees that:
   (i) s/he will neither copy nor distribute any material, or other information which comes into his/her possession as a result of his/her employment by the Employer, other than for approved Employer use;

   (ii) s/he will not during the period of employment by the Employer nor at any time thereafter, directly or indirectly, disclose to others and/or use for his/her own benefit or for the benefit of others, private information including, but not limited to, trade secrets, customer lists, employee and prospective employee information, proprietary software products, profit and loss statements, financial statements, financial ratio analyses or any other financial information pertaining to the business of the Employer or to any of its clients, consultants, licensees or affiliates, acquired by him/her during the period of his/her employment, except to the extent as may be necessary in the ordinary course of performing his/her duties as an Employee of the Employer;

   (iii) s/he will not disclose to the Employer or attempt to induce the Employer to use any private information or material to which the Employer is not entitled; and

   (iv) upon termination of his/her employment with the Employer, s/he will return to the Employer or to the Employer's customer all materials and information, and any copies thereof and certify to the Employer that s/he no longer has any rights to such materials or information, and s/he will covenant that the original and all copies of such materials and information have been returned to the Employer or to the Employer's customer, and Employee hereby covenants that s/he will not develop data processing professional services or products that are competitive with the services of the Employer based upon the knowledge obtained while employed by, or as result of being employed by, the Employer.

2. <u>Customer Information.</u> The Employee recognizes and acknowledges that the relationship between the Employer and its customers and potential customers involves the exchange of private information, both oral and written, by both the customer or potential customer and the Employer. The Employee acknowledges that all such information including, but not limited to, the identity of the Employer's customers or potential customers, the identity of the Employer's customers' representatives with whom the Employer has dealt, the identity of all the services being performed for each such customer by the Employer, the identity of employees or consultants employed by the Employer in the performance of such services, the price being charged by the Employer to such customers or potential customers and the needs of such customers or potential customers, are all trade secrets of the Employer and constitute private information disclosed to the Employee in connection with his/her employment. Therefore, the Employee agrees that any solicitation or business dealings with any such customer or potential customer subsequent to the Employee's termination of employment with Employer, for any reason, for his/her own account or on behalf of any person or corporation other than the Employer, would constitute improper use of such information and trade secrets.

_____
Jeanne Langley